UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
IN RE:

    JAMES F. WILSON                        CASE NO. 06-60870
    THERESA F. WILSON

                       Debtors            Chapter 13
--------------------------------------------------------
APPEARANCES:

DAVID GIGLIO, ESQ.
Attorney for Debtors
231 Elizabeth Street
Utica, New York 13501

GUY A. VAN BAALEN, ESQ.
Assistant U.S. Trustee
10 Broad St.
Utica, New York 13501

LYNN HARPER WILSON, ESQ.
Staff Attorney for Chapter 13 Trustee
250 South Clinton St., Suite 203
Syracuse, NY 13202

**MEMORANDUM-DECISION AND ORDER**

On May 2, 2006, James and Theresa Wilson ("Debtors") filed a voluntary petition in bankruptcy pursuant to chapter 13 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 11 U.S.C. §§ 101-1330 ("BAPCPA") or ("Code"). On that same date, the Debtors, through their attorney David Giglio, Esq. ("Giglio"), filed a "REQUEST FOR WAIVER OF COMPLETION OF INSTRUCTIONAL COURSE CONCERNING PERSONAL FINANCIAL

MANAGEMENT BASED ON EXIGENT CIRCUMSTANCES" ("Extension Request").[1] In the Extension Request, signed only by Giglio, he asserts that the Debtors filed their chapter 13 petition "only two days subsequent to the first date that I had any contact with the debtor(s)." Additionally, Giglio alleges that "the debtors are in danger of losing their homestead as a foreclosure sale is scheduled for May 9, 2006." (*See* Affirmation in Support of Waiver, dated May 2, 2006 at paragraphs 2 and 3).

By a letter dated May 3, 2006, the Assistant U.S. Trustee, Guy Van Baalen ("UST"), advised the Court that he objected to Debtors' Extension Request on both substantive and procedural grounds. First, the UST argues that the Extension Request references a financial management course required by Code § 727(a)(11) as a condition precedent to obtaining a discharge, as opposed to the credit counseling required by Code § 109(h)(1). Second, the UST notes that the Extension Request is not signed by the Debtors. Lastly, the Debtors have provided no evidence of circumstances that warrant a temporary waiver of the counseling requirement. The UST notes that the foreclosure sale was not scheduled until 7 days after the Debtors filed their chapter 13 petition, and they have failed to provide evidence that they requested credit counseling and were unable to obtain it within the 5 day period following the date of the request. By letter to the Court dated May 5, 2006, copied to the UST, Giglio responded to the UST's objection by

---

[1] Code § 109(h)(3)(A) of BAPCPA permits a debtor to temporarily avoid the requirements of subsection (h)(1) of Section 109 (that the debtor obtain credit counseling from an approved credit counseling agency within the 180 day period preceding the filing of the debtor's bankruptcy petition), if the debtor can certify to the court that: a) the debtor requires a "waiver" of the requirements based upon "exigent circumstances"; b) the fact that credit counseling was not provided to the debtor within 5 days of the request for same; and c) the court is satisfied that a waiver should be granted. Subsection (h)(3)(B) further provides that the "exemption" available under (h)(3)(A) can last no more than a total of 45 days. Both the term "waiver" and "exemption" are misnomers, since what the statute seeks to provide the debtor with is an "extension" of time to comply with the credit counseling requirements.

enclosing a copy of a faxed letter he received from the Debtors on that date "assuring me that they will take care of obtaining the instructional course ASAP." Giglio goes on to note that his first contact with the Debtors was on May 2, 2006, at which time it was determined that they needed to file a chapter 13 petition with the pending foreclosure sale scheduled for May 9th; however, due to the fact that his office "has many other matters to attend to and the debtors both work full-time jobs, it was necessary to file the petition on that date as it could not be guaranteed that we would be able to arrange a time to meet and attend to the matter prior to May 9, 2006." (*See* Giglio letter dated May 5, 2006).

In light of the UST's opposition, the Court scheduled the Extension Request for a hearing before the Court on May 23, 2006. At the hearing, both the UST and Giglio argued their respective positions. Giglio asserted that the first time he met the Debtors was on May 2nd, the day they filed their chapter 13 petition. He indicated that on that day he advised them of the need to obtain credit counseling, but he apparently did not tell them that in order to obtain an extension of time to obtain the counseling they would be required to establish that they requested the counseling and were unable to obtain the same within 5 days of the request. In fact, he apparently told the Debtors that he would file their petition and then seek an extension of the time to obtain credit counseling as he apparently had done in a number of other cases he had filed under BAPCPA.[2] Giglio opined that given the fact that the foreclosure sale was only a few "business days" away, and that both Debtors had full time jobs and the uncertainty of whether the Internet would be accessible, he felt that the immediate filing of the petition in the absence of any credit counseling constituted "exigent circumstances."

---

[2] The Court notes that a review of the case docket indicates that on May 19, 2006, Giglio e-filed the Debtors' Certificates of Counseling dated May 12, 2006, issued by the Consumer Credit Counseling Service of Central New York, Inc.

The UST asserted, at oral argument, that the Debtors completely ignored the requirements of Code § 109(h)(3)(A), specifically, that there was no effort whatsoever to comply with subsection (3)(A)(ii), which required that the Debtors request credit counseling, and then only if it can be shown that it was unavailable for a period of 5 days following the request, are the Debtors eligible to seek an extension. The UST notes that, in fact, the Court is completely uninformed as to exactly what the Debtors did since there is no certification of any kind from them.[3] The UST also opined that in the view of some bankruptcy courts, an impending mortgage foreclosure sale does not constitute an "exigent circumstance."

In response to the UST, Giglio asserts that he interpreted the requirement of Code §109(h)(3)(A)(ii) as requiring 5 business days and, apparently, that period would not expire before the date of the foreclosure sale. Additionally, he argued that as soon as he filed the Debtors' petition he received an electronic notification from the Court that an extension had been granted. Giglio acknowledged that the electronic notification was not an order signed by the Court, but that he relied upon the notification in believing that the requested extension had been granted to June 1, 2006.[4]

---

[3] With regard to the actions of the Debtors in obtaining credit counseling, it is apparent that they did nothing in that regard until at least May 5, 2006, some 3 days after they filed, as evidenced by a fax transmission from Mrs. Wilson to Giglio indicating that, "will call today to make appt asap w/credit counciling (sic) service." *See* Giglio letter to the Court dated May 5, 2006, with attachment.

[4] It appears that Giglio was referring to an electronic docket entry dated 5/02/2006 which read, "Certification of exigent circumstances that merits a waiver from complying with the credit counseling requirement. Filed by James E. Wilson, Theresa E. Wilson. Credit Counseling Certificate Due: 6/1/2006. (Giglio, David) (Entered: 05/02/06)." Even if Giglio had relied on this entry in the electronic docket, as will be discussed later in this Decision, the deficiencies that ultimately convince the Court to dismiss the Debtors' case all occurred pre-petition.

## JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334(b), 157(a)(b)(1) and (b)(2)(A).

## DISCUSSION

Few sections of the newly enacted BAPCPA have been as uniformly misunderstood as §109(h)(3)(A), perhaps because the whole concept of compelling an individual already buried in a financial morass to undergo credit counseling during the 180 day period pre-filing, as a condition precedent to actually filing a petition, makes about as much sense as requiring spouses locked in a bitter divorce proceeding to attend a marriage counseling seminar before a judge can sign a decree dissolving their marriage. In both cases, it is generally too late for either type of counseling to produce a beneficial result. Nevertheless, Code § 109(h)(1) is a fact of life for any individual filing a bankruptcy petition after October 17, 2005. For the atypical debtor who travels a rather leisurely path toward bankruptcy, the section in question probably does not pose any problem. However, for the potential debtors who seek out bankruptcy relief on the eve of a foreclosure sale of their home or business premises or the eviction therefrom, or the repossession of a motor vehicle or the levy of a judicial lien on a bank account, time is not an ally. Nor is it an ally for the potential debtors' attorneys of choice who have such a real life crisis dumped in their legal laps. In these situations, which may well be more the rule than the exception, the ability to obtain instantaneous, and often futile credit counseling may be very difficult, if not impossible. Thus, it appears that a practice has already developed in this District, and apparently

elsewhere in the country, where debtors' attorneys are filing the bankruptcy petition first and asking the Court for an extension of time to meet the credit counseling requirement post-petition. Unfortunately, that practice immediately runs afoul of Code § 109(h)(3)(A).

In the contested matter, *sub judice*, it would appear that the Debtors' efforts to obtain an extension must fail for a number of reasons. First, the Debtors are unable to show any pre-petition compliance with the 5 day requirement mandated by subsection (3)(A)(ii). In fact, it is clear that the Debtors did not even arrange for credit counseling until some three days after they filed their petition, even though their attorney alleged that he made them aware of that requirement on the day they first appeared in his office. While at least one reported case has reached the unusual conclusion that the 5 day counseling requirement found in subsection (3)(A)(ii) can be satisfied by a post-petition request, *see In re DiPinto*, 336 B.R. 693, 700 (Bankr. E.D. Pa. 2006), this Court simply cannot embrace that result. The *DiPinto* court reached its conclusion because it noted that if Congress intended that the credit counseling be sought pre-petition, it could have easily said so in the statute, and it did not. While this Court cannot quarrel with the *DiPinto* rationale, it believes it is much too narrow in its scope. This Court believes that the only conceivable rationale for subsection (3)(A)(ii) was to make a last ditch effort to steer the would be debtor away from bankruptcy and into some type of out-of-court payment plan for which credit counseling services are well known. It would make absolutely no sense to permit a debtor to seek credit counseling during a 5 day period occurring post-petition. The Court notes that the majority of courts to have considered this issue disagree with the conclusion in *DiPinto*. *See In re Carey*, No. 6:06 BK 00490 ABB, 2006 WL 1321419, at *3 (Bankr. M.D. Fla. May 16, 2006)*; In re Dansby*, 340 B.R. 564, 568 (Bankr. D.S.C. 2006); *In re Tabib*, 335 B.R. 424, 427 (Bankr. W.D. Mo. 2005).

The second issue presented by the Debtors' Extension Request involves the form of the certification presented to the Court. As indicated, the certification was not executed by the Debtors, but rather by Giglio. With regard to the certification required by Code § 109(h)(3)(A)(ii), courts are somewhat divided on the form the certification must take, as well as who may execute the certification. Some courts considering the form of the certification have agreed that while the certification need not be sworn to under penalties of perjury, it must be the certification of the debtor(s), not their counsel. *See, e.g., In re Graham*, 336 B.R. 292, 296 (Bankr. W.D. Ky. 2005); *In re Tabib*, 335 B.R. at 421; *In re Cleaver*, 333 B.R. 430, 434 (Bankr. S.D. Ohio 2005). Other courts have required that the certification not only be executed by the debtor, but also that it be sworn to under the penalty of perjury. *See, e.g., In re Rodriguez,* 336 B.R. 462, 469-70 (Bankr. D. Idaho 2005); *In re Wallert*, 332 B.R. 884, 887 n.3 (Bankr. D. Minn. 2005); *In re Hubbard*, 332 B.R. 285, 289 (Bankr. S.D. Tex. 2005); *In re LaPorta*, 332 B.R. 879, 881 (Bankr. D. Minn. 2005). Under either scenario adopted by the various courts to have considered the issues, Giglio's certification would be inadequate to comply with subsection (3)(A)(ii). The Extension Request executed only by Giglio begins with the phrase, "David Giglio hereby affirms." There is no jurat at the end of the Extension Request, and it is not affirmed under the penalties of perjury. Its only pertinent allegations relate to the date the petition was filed, to wit: May 2, 2006, asserting that date to be "only two days subsequent to the first date that I had any contact with the debtor(s)," and a statement that the Debtors were in danger of losing their home as a foreclosure sale was scheduled for May 9, 2006. Thus, the Court concludes that the Extension Request prepared and filed by Giglio does not comply with Code § 109(h)(3)(A)(ii).[5]

---

[5] The Court notes that there is somewhat of an inconsistency between Giglio's Extension Request and his oral argument as to when he first met with the Debtors. At oral argument he indicated that he filed the petition on the day he first met with the Debtors, to wit: May 2, 2006,

Thirdly, even assuming arguendo that the Request did comply with the statute and that the Debtors timely sought credit counseling, is there any evidence of exigent circumstances? Presumably, the Debtors would point to the impending foreclosure sale of their residence as the exigent circumstance; however, some courts to have visited that very issue have concluded to the contrary. In *In re Tabib*, 335 B.R. at 422, the court noted that a pending foreclosure sale may not constitute an exigent circumstance because under Missouri law the debtor should have been apprised of the date of the sale several weeks in advance. *See also Hedquist v. Fokkena* (*In re Hedquist*), No. 06-6007MN, 2006 WL 1042429, at *2 (B.A.P. 8th Cir. Apr. 21, 2006); *In re Dixon*, 338 B.R. 383, 388 (B.A.P. 8th Cir. 2006); *In re Hubbard*, 332 B.R. at 384. *But see In re Calderon*, No. 06-10561-BKCLMI, 2006 WL 871477, at *1 (Bankr. S.D. Fla., Mar. 8, 2006); *In re Henderson*, 339 B.R. at 39; *In re Childs*, 335 B.R. 623,630 (Bankr. D. Md. 2005) (per curiam). The Court, in order to dispose of this contested matter, need not take a position on the issue of whether or not the impending foreclosure sale constituted an exigent circumstance, but does note that the Debtors, under applicable New York State law, would have to have received approximately 30 days prior notice of the foreclosure sale (*See* New York Real Property Actions and Proceedings Law, § 231).

The final issue before the Court involves the appropriate disposition of the Debtors' chapter 13 case.[6] Since the Debtors have not complied with Code § 109(h)(1) and the Court has determined that the Debtors are not entitled to an extension or a temporary waiver of the credit

---

while in his Extension Request he asserts that he first met with the Debtors some two days prior to the date he actually filed their bankruptcy petition.

[6] The Court notes that the UST's opposition requests only that the Court deny the Debtors' request for a temporary waiver of the requirement to obtain credit counseling. The UST does not seek dismissal of the case.

counseling requirement under Code § 109(h)(3), the Debtors are ineligible for chapter 13 relief. Thus, notwithstanding the lack of a request by the UST seeking a dismissal of the case, the Court does not believe that it can simply rule on the Extension Request and proceed with a case in which the Debtor is ineligible for chapter 13 relief.

A small minority of courts when faced with the prospect of dismissing a debtor's case under Code § 109(h)(1) and recognizing the hardship potentially faced by that debtor if he/she is compelled to file another case within one year of the dismissal, have fashioned a remedy that would arguably permit the debtor to avoid the "serial filer" label by striking "rather than dismissing the current case."[7] *See In re Carey*, No. 6:06BK00490ABB, 2006 WL 1321419, at *5 (Bankr. M.D. Fla. May 16, 2006); *In re Rios*, 336 B.R. 177, 180 (Bankr. S.D.N.Y. 2005)*; In re Hubbard*, 333 B.R. at 388. Those cases all rely on the premise that because the individual is ineligible to be a debtor, no bankruptcy case has been commenced, and each acknowledge the rather draconian prospect that will face the would-be debtor in the event of a re-filing within the following year. Conversely, a much greater number of courts to visit the issue have concluded that dismissal of the case is the only appropriate remedy. Those cases rely on primarily the premise that eligibility to be a debtor is not jurisdictional and that until a bankruptcy court determines eligibility, a case actually exists which cannot thereafter be deemed a nullity by simply "striking" the case as if it never existed. *See, e.g., In re Mills*, No. 06-00079, 2006 WL 1071679, *4 (Bankr. D.D.C. Apr. 20, 2006); *In re Seaman*, 340 B.R. 698, 707-09, (Bankr. E.D.N.Y. 2006); *In re Tomco*, 339 B.R. 145, 161 (Bankr. W.D. Pa. 2006); *In re Ross*, 338 B.R. 134, 136 (Bankr. N.D. Ga. 2006). This Court need not regurgitate here the rationale of each of those cases or the

---

[7] Code § 362(c)(3) and(4) either limit or eliminate the automatic stay altogether in the case of "serial filers."

numerous others that reach the same conclusion. Suffice it to say that this Court is in agreement with their uniform conclusion that dismissal of the case, as opposed to striking it, is the appropriate result. Accordingly, the Debtors' chapter 13 case be, and it hereby is, dismissed.[8]

IT IS SO ORDERED.

Dated at Utica, New York

this 5th day of June 2006

/s/   Hon. Stephen D. Gerling
STEPHEN D. GERLING
Chief U.S. Bankruptcy Judge

---

[8] The Court is aware that the Honorable Robert E. Littlefield, Jr, a Judge of this Court presiding over the Albany Division, has issued an unreported decision in the case of James William Hubel, Case 05-20260, January 3, 2006, in which he struck rather than dismissed the debtor's case under similar circumstances. This Court respectfully disagrees with that portion of the decision.